In re Schmidt's Estate.

In re Schmidt's Estate.

*March 31 — April 14, 1896.*

*Contracts: Board, etc., furnished to father-in-law: Compensation: Presumption.*

One who furnished board and lodging and rendered services to his father-in-law at intervals during a period of twenty years is presumed to have done so gratuitously, where there was no express agreement as to compensation and no intimation on his part during that time that he expected to be paid; and this presumption is not overcome by his testimony that he intended all the time to make claim for compensation, such intention not having been manifested until, being dissatisfied with his father-in-law's will, he preferred the claim against his estate.

Appeal from a judgment of the circuit court for Outagamie county: John Goodland, Circuit Judge. *Reversed.*

This was a claim filed in the county court of Outagamie county by *Joseph Moder*, against the estate of said deceased, for a note against him for $100 and interest thereon; for $125 for services rendered, at the request of the deceased, in

In re Schmidt's Estate.

attending to his affairs for six years immediately prior to
his death; and for $400 for board, care, and nursing fur-
nished him and at his request, during the same period.  Ob-
jections were made to the claim, but the court allowed it at
$515.94, and an appeal was taken to the circuit court by the
executors.  A trial was had before a referee, and the sum
of $127.96 was found due on the note, and the sum of $440
was allowed for the other items, amounting in all to $567.96.
Upon exceptions to the report, the circuit court confirmed
it and gave judgment accordingly, from which one of the
executors, *Peter R. Schmidt*, and *John Bottensek*, as guard-
ian for certain legatees, appealed.

The referee found that for about twenty years prior to
his death the deceased had visited, boarded, and lodged at
the home of the claimant and his wife, who is the daughter
of the deceased, at intervals of several weeks and months,
and during that period the claimant had assisted him in con-
ducting, in part, his business correspondence, and in looking
after his loans, etc., and had attended to and assisted him in
sickness; that the services, board, and lodging had been the
same, in nature and extent, prior to 1886, as subsequent, and
for the last twenty years of his life.  The deceased was a
widower, and had a home most of the time in Appleton, and
part of the time in Greenville, and boarded or took his meals
with the claimant, or his son, *Peter Schmidt*, or at hotels or
boarding houses.  From 1885 to his death he boarded with
the claimant at different periods, from two to twenty-one
weeks each.  In 1878 he gave his daughter, claimant's wife,
securities to the value of $500, and in 1882 $400 more, and
subsequently assigned her a mortgage of the value of $500.
In December, 1887, he conveyed certain real estate to claim-
ant's wife and to his grandchildren, the children of his son
*Peter Schmidt*, giving her an estate therein for her life, after
his death.  The claimant never demanded any pay or com-
pensation from the deceased in his lifetime, and never gave

In re Schmidt's Estate.

him to understand that he expected any, for such board, lodging, and services; and there was no express contract for compensation, and no other facts from which a promise to pay for the same could be implied. He did not board with claimant in a permanent manner, or a sufficient length of time, the referee found, to be considered a member of the claimant's family. By his will he gave the claimant's wife the income of one half of his estate of about $6,000 during her lifetime. The claimant testified that he put down on a memorandum book the periods deceased stayed with him, but the charges were not made until afterwards, when he "found out how he was acting against me. I did not make any charge until I found out I was not getting what I ought to have, and how my brother-in-law beat me;" and that this was about a year or so after the old gentleman died. He produced a memorandum book upon which there were various entries for board and services. He testified he had it in mind to charge the deceased from the time he came to his place twenty years ago, but never tried to collect anything until after he died.

For the appellants there was a brief by *A. B. Whitman* and *John Bottensek,* and oral argument by *Mr. Whitman.*

*Humphrey Pierce,* for the respondent.

PINNEY, J. The claimant was clearly entitled to judgment for the principal and interest of the note he held against the deceased, amounting to $127.96. There was no express contract for compensation for the board and lodging and services included in the claim under consideration, and the only question is whether the facts and circumstances are such that any promise to compensate the claimant therefor can be implied. The charges were not made until after the death of the testator, and the claim was evidently preferred because the claimant was disappointed and vexed at what he regarded as an unfair and unequal disposition which the

In re Schmidt's Estate.

testator had made of his estate, as between the claimant's wife and her brother and his children. This fact is cogent evidence to show that it was understood at the time, in view of the relationship existing between the parties, that the boarding, lodging, and services, for which a claim was not preferred until after the testator's death, were furnished gratuitously and without hope or expectation of compensation. It is true, the claimant testifies that he had an intention all the time to make claim for compensation; but, if so, it was secret and undisclosed, and had been cherished for over twenty years, during which the relations between the parties, as thus disclosed by the facts, had existed. Had the testator dealt more liberally by the claimant's wife, it is reasonable to suppose that nothing would ever have been heard of this portion of the claim. Upon the evidence before us, we cannot conclude that the claimant expected to receive or enforce payment for what were evidently intended by him as acts of hospitality, kindness, and friendly assistance to his father-in-law, and were received by him as such for such a very long period and without any intimation of any intention on the part of the claimant to make any charge for them. It cannot make any difference that the testator did not become continuously a member of the claimant's family. The law would not imply a promise on the part of a guest to pay for board and lodging, and, under the circumstances, it is but fair to assume that the testator had an implied invitation to come and stay in the claimant's family, when and as he chose, as their guest, and that it was so regarded. The claimant doubtless assisted him gratuitously in his business affairs, expecting that his wife would reap some advantage, as she did, from the testator's bounty. The parties were not dealing as strangers unaffected by any personal relation, or in a business sense, and no liability can be implied for the board, lodging, and services.

The case falls within the rule that where near relations,

by blood or marriage, reside together as one common family, and one of them renders services to another, and such other furnishes him board and lodging or other necessaries or comforts, a presumption arises that neither party intended to receive or pay compensation for the services, on the one hand, or for the board and lodging or other necessaries or comforts, on the other; that they were intended as mutual acts of kindness, done or furnished gratuitously. *Kessler's Estate*, 87 Wis. 664. The relationship between the parties and the circumstances of the case sufficiently rebut the presumption that would exist in other cases that compensation was intended. *Mountain v. Fisher*, 22 Wis. 93; *Kaye v. Crawford*, 22 Wis. 320; *Hall v. Finch*, 29 Wis. 278; *Wells v. Perkins*, 43 Wis. 160; *Ellis v. Cary*, 74 Wis. 186. The judgment of the circuit court is therefore erroneous.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment in favor of the claimant for $127.96, with costs.