Estate of Marotz: Orvis, Claimant, Respondent, vs. Schwahn, Executor, Respondent: Runge, Objector, Appellant.

*November 6—December 4, 1951.*

For the appellant there were briefs by *Eberlein & Eberlein* of Shawano, and oral argument by *Frederic C. Eberlein*.

*Louis W. Cattau* of Shawano, for the respondent Pauline Orvis.

BROADFOOT, J. Pauline Orvis was married and resided in Chicago until 1939 when her husband died. She then returned to Shawano to the home of her mother and step-father. She worked as a domestic and practical nurse until her stepfather died in 1941. Thereafter she worked in various factories in Shawano until 1946. After the death of Mr. Marotz in 1941, Mrs. Marotz asked a son-in-law, Ed. Schwahn, who lived in the city of Shawano, to look after her business affairs for her, and Mr. Schwahn continued to do this until the time of her death.

In the summer of 1946, Mrs. Marotz became ill. She was then eighty-six years of age and senile. Some of the children

who resided in Shawano had a meeting and it was agreed among those present that Pauline should care for her mother and that she would be paid for her services. Mrs. Marotz took no part in the conference. Other members of the family were contacted by letter and all agreed except the objector and possibly one other daughter. No further details of the agreement appear in the record. Pauline's work at a factory terminated in the fall of 1946 and from then until her mother's death she gave the care for which she filed the claim. No objection was made to the items for taxes, wood, repairs, and lights.

One of the findings of the trial court was as follows:

"6. That such services so rendered by the claimant to the deceased, her mother, were not gratuitous and were rendered with expectation to be paid upon the death of the deceased; that there was in effect an express contract by the deceased during her lifetime to pay for such services."

Two neighbors testified as to conversations with Mrs. Marotz in which she stated that Pauline was to care for her and was to receive everything Mrs. Marotz had. These conversations were during a period when Mrs. Marotz was admittedly incompetent, and the claimant testified that her claim was based on the family agreement and not on any agreement with her mother.

The objector claims upon this appeal that the evidence fails to establish an express contract by the decedent to compensate the claimant and the presumption that the services were gratuitous has not been met by the testimony in the record.

In stating the rule in Wisconsin the case of *Estate of Goltz*, 205 Wis. 590, 238 N. W. 374, is usually cited. In that case the court stated (p. 594):

"The law is well established that 'where near relatives by blood or marriage reside together as one common family,

and one of them renders services to another, and such other furnishes him board and lodging or other necessaries or comforts, a presumption arises that neither party intended to receive or to pay compensation for the services rendered on the one hand, or for the board and lodging or other necessaries or comforts on the other; that they were intended as mutual acts of kindness done or furnished gratuitously.' *Estate of Kessler,* 87 Wis. 660, 664, 59 N. W. 129; *Schmidt's Estate,* 93 Wis. 120, 67 N. W. 37; *Williams v. Williams,* 114 Wis. 79, 89 N. W. 835; *Estate of Skinner,* 189 Wis. 390, 207 N. W. 942.

"A careful consideration of all the facts and circumstances which the entire record reveals leaves no doubt that this case falls within the rule laid down in the *Kessler Case* and frequently thereafter approved by this court.

"Since the facts of this case bring it within the rule stated and give rise to the presumption of gratuitous services, it was incumbent upon the claimant to prove an express contract by direct and positive evidence or to prove by unequivocal facts and circumstances that which is the equivalent of direct and positive proof of an express contract. *Hall v. Finch,* 29 Wis. 278; *Tyler v. Burrington,* 39 Wis. 376; *Pellage v. Pellage,* 32 Wis. 136; *Leitgabel v. Belt,* 108 Wis. 107, 83 N. W. 1111."

Applying that rule, the record here discloses no express contract with the deceased nor does it disclose unequivocal facts and circumstances that are the equivalent of direct and positive proof of an express contract.

The claimant relies upon the decision in *Estate of Grossman,* 250 Wis. 457, 27 N. W. (2d) 365. Each case, of course, must rest upon its own facts, and the two cases can be distinguished upon the facts. In the *Grossman Case* the claimant daughter resided in Milwaukee, more than one hundred miles from the home of her parents at Dale, Wisconsin. There was an express contract covering a portion of the claim in the *Grossman Case* and the court held that there were unequivocal facts and circumstances proven that were the

equivalent of direct and positive proof of an express agreement. In this case, the mother and daughter resided in the same household and had for several years. There was no express contract, and because of the mental incompetency of the mother there could be neither an express contract nor unequivocal facts and circumstances that would be the equivalent thereof.

The claimant next cites sec. 319.19, Stats., which reads as follows:

"A copy of the petition and order for hearing provided for in sections 319.16 and 319.18 may be filed in the office of the register of deeds for the county; and if a guardian shall be appointed upon such application all contracts, *except for necessaries at reasonable prices,* and all gifts, sales, and transfers of property made by such insane or incompetent person or spendthrift, after the filing of a copy of such petition and order as aforesaid, shall be void." (Emphasis supplied.)

Under this statute the claimant contends that an incompetent is liable for necessaries at reasonable prices. There is ample proof in the record that the care given was necessary, and the compensation claimed appears to be reasonable. This section of the statutes and the rule contended for were considered in *Estate of Engels,* 259 Wis. 62, 47 N. W. (2d) 335, in which the court made this statement (p. 68):

"According to Camardese's contention the need for more and better service in the care and nursing of Henry Engels continued for five hundred forty-two days after his return from the hospital until his death. If so there was ample time for the appointment of a guardian with whom Camardese could have contracted for compensation for the additional services which he seeks to recover in this case. In the absence of such an express contract there was no legal obligation for the additional services rendered by Camardese. *Schramek v. Shepeck,* 120 Wis. 643, 98 N. W. 213. There are cases in a few jurisdictions in which it has been held

under somewhat different circumstances that such an express contract is not necessary in order to recover on a claim for necessaries against a party who is not *sui juris;* but that rule is not applicable in this state."

Ed. Schwahn, the son-in-law, was not the guardian of Mrs. Marotz, and his agency, according to his own testimony, did not give him authority to contract for the care of Mrs. Marotz. The family agreement was not binding upon Mrs. Marotz or her estate, and we are not called upon to determine the liability of claimant's brothers and sisters upon that agreement.

The portion of the claim for taxes and other incidentals that are enumerated above, amounting to $216.22, that were not objected to, appears to be just and will be allowed, but the major portion of the claim for care, amounting to $3,090, is disallowed.

*By the Court.*—The judgment is modified as stated in the opinion and affirmed as so modified.